In the Matter of 54 Cafe & Restaurant, Inc., Petitioner, against John F. O'Connell et al., Constituting the State Liquor Authority, Respondents.

First Department, December 15, 1948.

*Melvin Howard Osterman* of counsel (*Frank I. Tashker* with him on the brief), for petitioner.

*Harry F. Karst* of counsel (*Alvin McKinley Sylvester*, attorney), for respondents.

Shientag, J. This is a proceeding brought pursuant to article 78 of the Civil Practice Act to review the action of the

respondents, constituting the State Liquor Authority (hereinafter referred to as the "Authority"), in cancelling petitioner's restaurant liquor license after a hearing held in accordance with the provisions of the Alcoholic Beverage Control Law.

The license, as the sound policy of the Alcoholic Beverage Control Law requires, was issued subject to the condition that the licensee maintain a restaurant on the premises. That means a bona fide restaurant as that term is commonly understood. For the violation of that condition, it is not only the right, but the duty, of the State Liquor Authority to suspend or to revoke the license. The question presented in this case is whether there was evidence legally sufficient to warrant the determination of the Authority that there was such a violation.

As the result of reports of investigators relating to the conduct and operation of petitioner's premises, a revocation proceeding was instituted against the petitioner on or about September 13, 1948, based upon the following charges, which were set forth in the notice of hearing:

"1. That the licensee has ceased to conduct on the licensed premises a bona fide restaurant within the provisions of the Alcoholic Beverage Control Law.

"2. That the licensee has failed to keep and maintain on the licensed premises adequate and accurate books and records of the business conducted on the licensed premises as required by Section 106, subdivision 12, of the Alcoholic Beverage Control Law."

After a fair hearing, held before a deputy commissioner of the Authority on October 7, 1948, that complied fully with all legal requirements, the hearing commissioner submitted a report to the Authority which is not incorporated in the printed record, but which was handed up to the court in the course of the argument. In that report the hearing commissioner made the following recommendations: "In view of the fact that the investigator was able to get food on one visit; that another visit was made on July 2nd, which was a Friday night and the start of a 4-day holiday; that the kitchen had dishes, equipment and cutlery to serve at least 100 people, and the type of premises being a night club in which there is practically no business during the summer months, I do not believe that Charge No. 1 should be sustained. Charge No. 2 is not sustained."

Thereafter, as the record does show, the Authority on November 17, 1948, presumably with the report and recommendations of the hearing commissioner and the minutes of the hearing before it, agreed with the hearing commissioner that Charge

No. 2, relating to the failure to keep adequate and accurate books, was not sustained, but the Authority found that Charge No. 1, that the licensee had ceased to conduct a bona fide restaurant within the provisions of the Alcoholic Beverage Control Law, was sustained, and on that ground ordered the petitioner's license cancelled. There is nothing in the record to indicate any reason for disagreeing with the recommendation of the hearing commissioner. All that we have is the bare decision that Charge No. 1 was sustained.

It is true that it is the action taken by the Authority, and not that recommended by the hearing commissioner, which is determinative and which is the basis of any appeal. However, the recommendation of the hearing commissioner, who heard and saw the witnesses, is entitled to much weight; indeed, in this case, his summary reflects accurately and concisely the view of the case taken by this court. We have here three visits by investigators. The first visit, on May 25, 1948, was from 9:45 P.M. to 11:20 P.M. Concededly, from what occurred on that visit, no case was made out against the petitioner. The two investigators returned on July 2d at 11:25 P.M. and remained until 1:30 A.M. on July 3d. Their testimony is that a waiter approached and when they asked for food he said they would be served only sandwiches. There were several other people in the dining room, but the investigators observed no one being served with food. They identified themselves to the licensee, who told them that the chef had left and he had not hired a new one yet as he expected the chef to return. In the meantime, because business was bad he was acting as chef himself and was helping out at the bar. The ice box contained practically nothing in the way of food.

In effect, it is because of what happened on this single visit, which as the hearing commissioner pointed out was on a Friday night and the start of a four-day mid-summer holiday, that the Authority determined that the petitioner's license should be cancelled because the licensee " has ceased to conduct on the licensed premises a bona fide restaurant within the provisions of the Alcoholic Beverage Control Law." Indeed, when the investigators subsequently returned on July 16th to examine the books and records they found listed as employees two waiters, one porter, one bartender and one chef, the chef receiving $45 a week; and they found the kitchen well stocked with a varied assortment of meats and vegetables and other articles of food. An examination of the records indicated that there were substantial food purchases and food sales during the

months of April, May and June (the very months that were considered), and that the food sales approximated more than 12% of the total liquor sales.

While courts are loathe to interfere with determinations of administrative agencies made in good faith, they have by no means abdicated their judicial responsibility to review and pass upon administrative action claimed to be arbitrary and without foundation in fact or in law. A finding of an administrative agency " is supported by the evidence only when the evidence is so substantial that from it an inference of the existence of the fact found may be drawn reasonably." (*Matter of Stork Restaurant, Inc., v. Boland,* 282 N. Y. 256, 273.) Insufficient evidence, it has frequently been held, is, in the eyes of the law, no evidence. (*Matter of Case,* 214 N. Y. 199, 204.)

This petitioner invested a substantial sum of money in equipping his place of business and for his license. Accepting in full the investigators' version of what occurred, and without questioning in any way the good faith of the Authority, it cannot be said that on this record there is any reasonable basis, in fact and in law, for a holding that the petitioner had " ceased to conduct on the licensed premises a bona fide restaurant within the provisions of the Alcoholic Beverage Control Law."

The determination of the State Liquor Authority cancelling the petitioner's restaurant liquor license is, therefore, annulled.

PECK, P. J., GLENNON, COHN and VAN VOORHIS, JJ., concur.

Determination unanimously annulled, with $50 costs and disbursements to the petitioner.