S. Samuel Di Falco, J.
This is an article 78 proceeding to review and annul the determination of the respondent State Liquor Authority which disapproved petitioners’ application for permission to move from its present premises to new premises, and refused to approve the transfer of petitioners’ license accordingly, and for an order directing respondent to approve such transfer and issue the required transfer license.
I have studied the papers here presented and in approaching my ultimate determination a somewhat detailed recital of the essential facts related is in order. They are impressive and emphasize the situation as I see it. Annexed to respondent’s answer are photostatic copies of the record before the Authority *985 constituting a survey (blueprint) of the proposed area; blueprint plans for the proposed licensed premises; area plan of the petitioners’ present location; area plan of petitioners’ proposed new location; rider to the petition for renewal; affidavits by petitioners sworn to April 6,1956, April 9,1956 and again April 9,1956; pictures of the present and proposed new location.
The petitions and affidavits of the petitioners, who are partners, show that the premises at which they are presently doing business is a store at 430 West 238th Street, in the borough of The Bronx. They have a license for the sale of liquor at retail for off-premises consumption and have had this license continuously since 1947 at this' store. They were 22 and 23 years of age respectively nine years ago when they obtained said license for this store. For the years of 1947 through 1949 inclusive, they aver that they conducted their business at said premises without taking any drawings therefrom, during which time, under existing Federal regulations and because of the unprofitable business there, the petitioner Anapo received $100 a month from the Veterans’ Administration to assist him for a period of one year and the petitioner Gambino had outside employment and paid approximately $10 per week to his partner from his outside earnings. For the following three years 1949 to 1951 they drew an average of only $37.50 each per week from the store. Since 1951 to date, they further aver, they have never drawn more than $70 each per week from the business. It was necessary for Gambino to obtain outside employment from 1947 to October of 1955. He is married and has four dependents of which three are infant children. Anapo is single. He avers that he has not been able to marry due to his inability to support a family on the small income earned from this store.
Their application for removal to a new location and license therefor is based upon extreme hardship. Their papers patently reveal the extreme hardship which they have suffered since 1947 when they obtained their license at their present location and that despite all their efforts they have met with no success. It is apparent that the location of the store was poorly selected and even though they have put in a minimum of 12 hours per day, or a total of 72 hours per week, circularized the neighborhood and solicited the area for business they have consistently been unsuccessful in increasing business. They merely increased operation expenses. They set forth a statement of their gross business transacted annually as follows: 1947 — $12,347.85; 1948 — $19,860.49; 1949 — $23,166.45; 1950 — $22,004.43; 1951 — $26,407.47; 1952 — $28,350.32; 1953 —$30,616.63; 1954 — $33,637.97; 1955 — $32,879.71» No less than $3,000 of the bush *986 ness in 1955 was solicited by them personally in their own residential neighborhood, and from friends, relatives, and neighbors, all of which are far outside the area of the store.
Examination of the neighborhood and its physical characteristics discloses that the store is situated on a side street at the bottom of a steep hill; 50 feet beyond the store’s location and at the bottom of the hill is a dead end. No transients pass through the area and by virtue of the physical situation very few of the people residing thereabouts have occasion to pass in the vicinity of the store. Directly across the street is a large private estate whose landscaped property covers more than three quarters of the street directly opposite the store. The area of the store is in the highest and hilliest section of Biverdale and from the dead end, previously mentioned, located 50 feet from the store, is a stairway comprising eight flights which leads to Irwin Avenue, the first street beyond the dead end.
It further is shown that the store immediately adjacent to petitioners’.store has been vacant continuously since January, 1955, almost 19 months now, and this despite the fact that the store is a large corner store and the rental asked is only $75 per month. On the same block it is pointed out that there are four other empty stores which have been continuously unoccupied for the past six years. The argument is made by petitioners, and it appears to me correctly so, that the failure of rental of these stores is highly indicative of the fact that the public convenience of the people residing within the neighborhood does not require any type of store at this location including a liquor store. The amount of gross business transacted by these petitioners at their store clearly indicates there is no pressing need on the part of the public to have a liquor store located at petitioners’ present location. The physical facts bespeak themselves. Moreover, the development of other sections of this Biverdale Avenue section has further tended to hurt the chances of petitioners at their present location. Subsequent to the opening of their store in 1947, a substantial shopping area was built and developed on Biverdale Avenue which is located two blocks away, up a steep hill. The Biverdale Avenue shopping center includes a number of large supermarkets, liquor stores, drugstores and every conceivable type of supply or service outlet normally utilized and found in a shopping center. There has been no new construction within a substantial radius of the petitioners’ liquor store for the past 10 years. On the other hand, there has been substantial construction of new housing throughout the Biverdale area along the parkway and west of Biverdale Avenue, which is away from petitioners’ store which is east of Biverdale Avenue. The *987 inhabitants of all this new housing do all of their local shopping on Eiverdale Avenue as they have no occasion or reason to proceed further east as far as petitioners ’ store or even to pass in the general vicinity.
To all of these physical facts there is no contradiction on the part of the respondent. Based upon these physical facts and detailed petitions and affidavits setting forth the situation of extreme continued hardship, petitioners sought by formal application to the Liquor Authority permission to remove their retail liquor store license from the afore-mentioned premises to a new location at No. 547 St. Paul’s Place, in the borough of The Bronx. Their petition is based not only upon the facts of extreme hardship stated but also that public convenience on the physical facts does not require a package store at their present location since there are two liquor stores present on Eiverdale Avenue which serve the public needs of the Eiverdale area. The petitioners met with no success. Although the New York City Alcoholic Beverage Control Board recommended approval of petitioners’ application for removal, the respondent State Liquor Authority denied same. The reasons given (and without the benefit of any hearing, even if one were not required by law) were:
“ There are liquor stores presently located at 3826 Third Avenue, 538 Claremont Parkway, 1514 Washington Avenue. In view of the foregoing, the Authority has determined that there are a sufficient number of similarly licensed premises serving the vicinity applied for and that public convenience and advantage will not be served by the granting of this application.
“ The demolition project in the area can be reasonably expected to substantially interfere with the income of the present stores in that area.
“ It is likely that at least one of the stores in the proposed area may have to be relocated because the owner will be forced to vacate as a result of the demolition project”.
This determination is challenged by petitioners and the instant proceeding for review has been brought.
The proposed new site is at 547 St. Paul’s Place as aforestated. This is an extremely wide thoroughfare approximately 100 feet in width. Five-story apartment houses line both sides of this street. The nearest package liquor store is located on a straight line approximately 800 feet distant from the proposed store. The record before me shows that all the package liquor stores in the neighborhood are doing a very good and substantial business. Exhibit “ C ” of respondent’s answer shows that the package stores referred to by respondent are doing from $111,000 to $139,000 as of the year 1955, i.e., store 3826 Third *988 Avenue is doing $139,000; store 538 Claremont Parkway is doing* $111,000; store 1514 Washington Avenue is doing $134,000 and store 1326 Washington Avenue is doing $121,000. Around the corner from the site of the proposed new location we find demolition is progressing for a new housing development known as the Grouveneur Morris Houses. It will occupy the area from East 169th Street, extending north to East 171st Street and be bordered on the east by the west side of Third Avenue and bordered on the west by the east side of Park Avenue. This area under demolition can properly be described as a slum area as it contains many small, frame, antiquated buildings, old factories, gas' stations, vacant lots, and areas nonproductive of potential customers. This new housing development, which would be proximate to petitioners’ desired new location, would be located opposite St. Paul’s Place and beyond the Third Avenue intersection and extending from 169th to 171st Streets from Third to Park Avenues, would substantially increase the housing facilities of the area with an accompanying increase of population and thus emphasize the need for a package store in the general area. Plans provide for apartments for 1,600 families and a total of 6,080 persons. It is further stated that the plans of the City Housing Authority do not call for any stores to be located in the project. The community is growing in population and with this new housing development will greatly improve the character of the area, bringing with it additional revenue to the stores now within the area including the package liquor stores mentioned by the respondent. I am convinced that public interest under these facts will certainly be served by the addition of petitioners’ package liquor store. It is difficult to understand respondent’s rejection upon the ground that “ the demolition project in the area can be reasonably expected to substantially interfere with the income of the present stores in that area”. Nowhere is there any proof by or before respondent by the three stores mentioned to that effect. The record establishes that the three stores have been consistently and are still doing a substantial business at their respective locations and it cannot be denied that in view of the new housing development that business will be greatly increased in the area. With respect to the.protests made by the three store owners to respondent regarding petitioners ’ application for removal on the grounds that their respective incomes would be diminished and that the demolition in the area will also affect their business, I am convinced that such protests were without basis or foundation in fact or any proof thereof and constituted no tenable basis for the action taken by respondent. The entire physical situation and the facts presented lead to *989 no other conclusion but that the demolition did not and does not affect the business of the present three stores in this densely populated area. If at all, this new housing development will enhance business when it is completed. Certainly it is.to be expected that the three stores would file protests objecting to a new store for competitive reasons. It is to be expected they desire the field to themselves. But competition is not the test as the respondent Authority and the courts have consistently held. This factor must yield to the public interest which unquestionably will be promoted by the creation of the new location in this populated, busy and fast growing neighborhood.
Mention is also made by the respondent of a fourth store (1326 Washington Ave.), which is located in the demolition area, that it may have to be relocated. However, nowhere does it appear that this store or any of the three other stores have demonstrated by factual proof that any hardship would result to them by reason of the demolition or petitioners’ proposed new store. Nowhere is there any proof that these three stores intend to remove themselves because of the conditions complained of. Furthermore, in response to the statements of respondent regarding the possible need to relocate the store at 1326 Washington Avenue, petitioners have averred (par. nineteenth of the petition) that the owners of said store have stated to the petitioner Joseph Gambino that they ‘ ‘ have no intention of making application to remove their package liquor store to premises 547 St. Paul’s Place, Bronx, New York, or to any other place in the area of the proposed site, and that they would have no objection to the granting of petitioner’s application for removal to the proposed site.” To this averment there is no factual proof in the record on the part of respondent in contradiction. Petitioners’ request for a reconsideration or a hearing before the respondent’s board was denied. While this is respondent’s prerogative, it is persuasive, in my determination herein, bearing upon respondent’s arbitrariness and the unreasonableness of its action.
I therefore conclude that respondent’s holding, that there are a sufficient number of similarly licensed premises serving the vicinity applied for and that public convenience and advantage will not be served by the granting of this application, is arbitrary and unreasonable in light of the facts disclosed. I am of the definite conclusion that public convenience and advantage will not be adversely affected by a removal of the petitioners’ store from the neighborhood where it is presently located. Petitioners have adequately and unequivocally demonstrated that since 1947 they have been under extreme hardship at their present loca *990 tion and have been unable to earn a livelihood from said store. The physical facts of that location and the situation there present stand uncontroverted by respondent. We cannot ignore the plight of petitioners under the facts presented that public convenience to those in the neighborhood will not be affected by petitioners’ removal from that locale. Under rule 39, as amended, of the rules of respondent Authority, a licensee must show a bona fide effort for at least two years to serve the public in the area. The record before me conclusively establishes that petitioners’ efforts in this regard for a period of nine years proved fruitless. Under the same rule 39, a gross volume of $45,000 or more per annum is considered by the Authority as some evidence that public convenience and advantage may be adversely affected by permitting removal from the present location. The record here proves the petitioners’ gross volume yearly to be far lower than the norm set by the Authority.
Considering now the general standard governing removals, as promulgated by the Authority, that public convenience and advantage will be promoted by permitting a package store at the new proposed site, I am firmly convinced that there is no tenable basis for the Authority’s determination that by reason of the three liquor stores now serving the vicinity applied for public convenience and advantage will not be served by the granting of this application. My conviction in this respect is not simply a disagreement with the Authority’s determination, but I feel upon the record here presented no other finding could be made. Under rule 39 of the Authority’s rules, a petitioner seeking removal must set forth in his application the location of all package stores within a radius of 800 feet, except where there are less than four stores within 800 feet the location of four stores nearest the proposed site. Here, the nearest store (3826 Third Ave.) is approximately 800 feet away in a straight line to the proposed site. The other two stores mentioned by the Authority are at a much greater distance away than 800 feet of the proposed site. All the stores, including the proposed site, are on different thoroughfares, and no two stores, including the proposed site, are on the same thoroughfare of the vicinity in question. Moreover, as previously set forth, the three stores mentioned are all doing a substantial amount of business in an area densely populated which will be subsequently improved and added to by the new residential development under construction. The primary concern is public convenience, not the number of stores. In Matter of Slater v. State Liq. Auth. (6 Misc 2d 980) where petitioner’s application for a removal was dismissed by Special Term, it appears from the facts stated *991 there that there were 9 retail liquor stores within an area of two square blocks and 16 such stores in the immediate vicinity serving the public in the area. These facts are self-evident that the Authority permitted the licensing of 16 stores in a particular vicinity upon the ground that public convenience required that amount of stores. Contrasted to this situation it does not strike me as reasonable that the Authority should deny petitioners’ removal to the new site upon the ground that there are three licensed stores now present and that public convenience and advantage will not be served by the granting of petitioners’ application. On the contrary, the physical facts and the record before me establish the contrary and belie respondent’s holding. The holding of the Authority that the demolition project in the area can be reasonably expected to substantially interfere with the income of the present stores in the area, is also unfounded in fact or in reason in the record here. As shown, the development known as the Gouveneur Morris Houses is an area comprising 6 square blocks. The area being demolished is, as I herein previously described, a slum section of nonpotential customers, which will be changed and improved into a fine residential area for 1,600 families or a total of over 6,000 persons, which will all become integrated into the entire area and enure definitely to the benefit and income of the three present liquor stores. Unquestionably with this improvement in the area, public convenience would require an additional package store especially where it is shown that one of them intends to vacate and not seek relocation anywhere in the area. In all of these respects I cannot overlook the report and recommendations made to respondent Authority by its New York City Alcoholic Beverage Control Board approving petitioners’ application. It is there stated that the petitioners are applying for permission to move from its present location to its proposed site, a distance of 3y2 miles; that the application is recommended for approval by the New York City-Alcoholic Beverage Control Board; that petitioners have no adverse license history, and are undergoing a severe hardship at their present location; that in 1948 and in 1952 the Authority disapproved petitioners’ requests to move to two other locations; that the proposed new site now requested is located in a congested business and residential area; that there is no liquor store on the same street as the proposed premises in any direction; that the nearest liquor store in any direction is a distance of approximately 800 feet (from which it can be inferred that all of the three liquor stores mentioned here by the Authority are more than 800 feet from the proposed new site); that all of the liquor stores in the proposed area are doing a substantial busi *992 ness, ranging from $111,000 to $139,000 as of the year 1955. At the end of this memorandum there appear the words “Approved? Subject to affidavit.”
In the light of all the foregoing I am convinced that the record before the Authority permitted of only one conclusion, and that is that sufficient hardship was shown and established warranting and requiring the removal; that no public convenience and advantage would be adversely affected by removal from the present site and that public convenience and advantage would be promoted by allowing the change to the new site. Upon the record presented by petitioners to the respondent Authority and the physical facts which have not been contradicted by any evidence or factual proof before the Authority, it is difficult to understand upon what basis or proof they disregarded the report of the local board and made the ultimate determination without taking any proof therein to disprove petitioners’ facts. While it is true that the law as constituted does not require the Authority to grant to petitioners a formal hearing, and such denial does not constitute a reason for reversal in and of itself, it does, in my opinion, constitute such an unreasonable and arbitrary disposition of petitioners’ application, upon the uncontradicted facts here established by them, as to warrant the court’s intervention in their behalf. Clearly the Authority has presented no finding upon which could reasonably be based its findings as made. It caused no further inquiry into the facts nor held any hearing with regard to the mere objections voiced by the three stores to petitioners’ removal.
Respondent asserts its determination was made in the exercise of its discretion under the mandate of the recognized law ■ and principles of law pertaining to judicial reviews of administrative bodies and that this court should not substitute its judgment for that of the Authority. The well-defined limitations on the respective jurisdictions of administrative agencies and of the courts, and the extent of those areas have been well defined with clarity and preciseness in authoritative pronouncements too numerous to recite. Many of the decisions deal with determinations of the liquor board. If the determination by the administrative agency upon a matter within its competence rests on substantial evidence, the courts must accept the determination as final. Unless the administrative finding is arbitrary, capricious or unreasonable, it is beyond judicial rebuke (Matter of Rossi v. O’Connell, 197 Misc. 718, 721, affd. 277 App. Div. 857; Matter of Glintenkamp v. O’Connell, 271 App. Div. 795, affd. 296 N. Y. 806; Matter of Fiore v. O’Connell, 297 N. Y. 260). While, as a general rule, I am reluctant to bold the State Liquor *993 Authority is arbitrary and unreasonable In its determinations, yet it is established by the authorities that the courts may not shirk their judicial responsibility to review and pass upon administrative action claimed to be arbitrary, capricious or unreasonable or without foundation in fact and law (Matter of 54 Cafe & Restaurant v. O’Connell, 274 App. Div. 428, 431, affd. 298 N. Y. 883) and that the Authority’s determination must be founded upon a reasonable, factual basis (Matter Barry v. O’Connell, 303 N. Y. 46; Matter of Fiore v. O’Connell, supra).
While the courts seek to avoid interference in this field of administrative discretion and refrain from substituting their judgment for that of the Authority in cases where there is room for a difference of opinion upon conflicting testimony, it does not follow’ that all determinations should be stamped "with approval simply because the Authority predicates its action on the statutory phrase “ Public convenience and advantage ” in explanation of its disapproval. Even such a determination must be supported by the record as a reasonable exercise of discretion. In this light and with the authoritative holdings as a guide, I reach no other conclusion than the record here presented is so persuasive and convincing on petitioners’ part and so unconvincing a showing has been made by respondent, that I am constrained to annul the determination made. A finding of the administrative agency is supported by the evidence only when the evidence is so substantial that from it an inference of the fact found may be reasonably drawn (Matter of Stork Restaurant v. Boland 282 N. Y. 256, 273). My finding is beyond the mere ambit of a difference of opinion with that of respondent. It is not a substitution of my judgment for that of respondent upon disputed facts appearing in the record, but rather a definite finding of no factual proof in the record here presented which supports or warrants the determination made by the respondent in the face of the proof offered by petitioners, the approval •recommended by the local board and no hearing or proof adduced to support a disapproval of petitioners’ application. The mere objections voiced by competitors have no probative value to support respondent’s rejection without any further proof in the record that the new location would jeopardize the business of the present three stores. As stated in Matter of Acker Merrall & Condit Co. v. New York State Liq. Auth. (282 App. Div. 638, 642) the processes of the Authority are calculated to develop and determine the relevant facts in any proceeding ”. Its determinations should be responsive to legitimate considerations supported by the facts. In Matter of Baird v. State Liq. Auth. (277 App. Diy. 60) the Appellate Division of *994 this department, in reversing the determination of the Liquor Authority and directing petitioner’s application be granted, stated the following, at pages 60-61, which is appropriate here: “ If there is substantial evidence of competent probative force to sustain the conclusion of the State Liquor Authority, its determination is to be confirmed. * * * If the facts on which the authority based its denial of petitioner’s application for a license bear no reasonable relation to the conclusion reached, its determination is to be annulled, and the license should be granted [cases cited] ”.
In light of all the foregoing I accordingly find that there is public advantage, rather than disadvantage, in petitioners’ moving the site of its business to the site requested and that there is no reasonable basis for respondent’s disapproval. Its action was arbitrary and unreasonable in the premises and must be annulled. Respondent is directed to approve the transfer. Settle order.