Henry A. Hudson, J.
This is a proceeding to review a determination of the State Liquor Authority disapproving the application of the petitioner for the issuance of a restaurant liquor license for premises situated in the village of Old Forge, New York, a hamlet having a permanent population of approximately 1,200 persons situated in the Adirondack Mountains and forest locale of the State.
The determination of the Authority was made after the cancellation of petitioner’s license on September 9, 1953 and subsequent applications made by him on December 30, 1953 and November 25, 1955 both of which were disapproved by the Authority.
The establishment of petitioner is a comparatively small restaurant containing in all, barroom and dining room, 13 tables and 38 chairs. It is located on the main street in the village. Its business is necessarily seasonal located as it is in the midst of the Adirondack Mountains and forest when the winter months with snowy and icy roads are not conducive to travel. The season normally opens for vacationists about the first of June and the peak business months are July and August, although as petitioner has stated, during April and May, October and November his business increases somewhat over the week ends when fishermen and hunters come into the area.
The premises were licensed originally on May 1,1937 and the license renewed annually thereafter until September 27, 1944 when it was cancelled by the Authority on a charge of having ceased to operate a bona fide restaurant and a sale of alcoholic beverages to an intoxicated person. The affidavit, attached to respondents’ answer states: “the license issued to petitioner *695 was canceled after a hearing”. However,, petitioner entered military service on April 24, 1942 and was not discharged until October 6, 1945 during which time his restaurant was being operated by a manager and the pleadings are silent as to whether petitioner was present at such hearing or represented by anyone. His petition states: “ The said violations referred to in the preceding paragraph occurred, if at all, while petitioner was in the military service stationed at Camp Anza, Arlington, California, and occurred without the approval, connivance, concurrence or participation of petitioner therein in any manner.” Be that as it may, petitioner secured leave, came to Albany, New York, and had a conference with the then executive officer of the Authority who advised petitioner to file a new application to license the premises and that same would be granted. The application was filed November 2, 1944 and the license renewed December 12, 1944. The premises remained licensed until July 22,1953 when a hearing on the charge that petitioner had ceased to operate the premises as a bona fide restaurant was held. This charge was based on an inspection of the premises by John H. Chesebrough, executive officer of the Herkimer County Beverage Control Board, made April 23,1953, and an examination of petitioner’s books and records for the months of January, February and March, 1953, an inspection of the premises by Ralph Stilan, investigator employed by the State Liquor Authority, on May 26, 1953 and T. E. O’Keefe, investigator, on June 1, 1953 and June 3, 1953, the last named having also inspected the books and records on June 3, 1953 covering the months of January, February, March, April and May, 1953 as to food sales, food purchases, bar sales, gas and electric bills. There is no record of any complaint by the Authority as to the adequacy or manner of keeping petitioner’s records.
The petitioner was present at this hearing and was represented by counsel. His license was cancelled as a result of this hearing on September 9, 1953. No appeal was taken from this determination.
Petitioner thereafter renovated the premises, installed new flooring, a new counter and purchased new equipment in an effort to bring the premises up to the standard requirements of the Authority and reapplied for his license on December 30, 1953. His application was disapproved February 17, 1954 by the Authority. No appeal was taken from this determination. The reason for such disapproval as stated in Exhibit “ B ” attached to respondents’ answer being: “ on February 17, 1954, an application for a Restaurant Liquor License for the same *696 premises was disapproved by the Authority for the reason that the premises were not operated as a bona fide restaurant; that access from the premises to other parts of the building was contrary to the provisions of the Alcoholic Beverage Control Law; that the physical layout of the premises was unsatisfactory because the interior visibility was inadequate and would hamper the effective enforcement of the Alcoholic Beverage Control Law; and that the Authority had no reasonable assurance that the applicant would in fact operate a bona fide restaurant.” It may be noted here that as to access to other parts of the building and interior visibility the premises were unchanged from the time of the issuance of the original license during the periods May 1, 1937 to September 27, 1944, a period of more than seven years and from December 12, 1944 to September 9, 1953, a period of over eight years during which time inspections are presumed to have been made by the Authority without complaint as to such features.
Thereafter the petitioner, in an attempt to overcome the newly stated requirements of the Authority, further remodeled the premises by removing the partition between the barroom and dining room to effect complete visibility as well as effecting other changes in the physical layout. In making these changes petitioner expended approximately $2,700. He then filed a new application on November 25, 1955 with the Herkimer County Alcoholic Beverage Control Board. The Herkimer County Board inspected the premises as to the physical layout, facilities, equipment, furnishings, fixtures, utensils and appliances, examined the books and records and approved the application. Thereafter petitioner was requested to appear at the office of the Authority in Albany for an interview on January 17, 1956 concerning his application. Petitioner appeared and was interviewed by deputy commissioner Doell in the presence of Commissioner Grant F. Daniels at which time he was requested to sign an affidavit prepared by the Authority which is hereinafter set forth in toto. Petitioner alleges that he was told that if he did not sign such affidavit, his application would receive no further consideration. . This is not denied by respondent. The petitioner was not represented by counsel at the time. He refused to sign the affidavit stating as his reasons that by doing so he would have been admitting that the charges as made against him by the Authority were all true when in fact they were not, as he had at all times operated his restaurant in accordance with the standards and requirements of any and all pertinent laws, rules and regulations of the Alcoholic Beverage *697 Control Law. He so informed the representatives at that time and place. The State Liquor Authority by a notice dated March 6, 1956 disapproved the application. The notice is hereinafter quoted at page 698.
The petitioner asserts that the determination of the Authority is based solely upon the grounds which formed the basis of the two prior revocations and upon the refusal of petitioner to sign the affidavit presented to him by the Authority at the conference called by it in Albany, N. Y.
An examination of the answer of the respondent and the affidavit of the deputy commissioner in support thereof would seem to clearly confirm this assertion by petitioner. No factual basis is set forth in the answering affidavit of the deputy commissioner as a reason for such disapproval. The affidavit reads in part:
Prior to the disapproval of this application, the petitioner was requested to appear at the office of the State Liquor Authority at Albany, New York, on January 17, 1956 for an interview in connection with his pending application. The petitioner did appear pursuant to said notice and was interviewed by me in the presence of Commissioner Grant F. Daniels.
At the above interview an affidavit was prepared, a copy of which is hereto annexed, marked Exhibit “ A ” which the petitioner was requested to sign. For reasons best known to himself, the petitioner refused to sign this affidavit.
The affidavit referred to as “ Exhibit A ” follows:
Jacob Berkowitz, being duly sworn deposes and says:
That he is the applicant for a Restaurant Liquor License for premises known as Jake’s Maple Grill operated by him at Main Street, Old Forge, New York.
That he has this day been informed by the State Liquor Authority and knows of his own knowledge that there is an adverse history in connection with the operation of these premises by deponent in that on two occasions, to wit, on September 27th, 1944, a license issued to applicant was cancelled on a charge of sales to an intoxicated person and ceasing to operate a bona fide restaurant and, on September 9th, 1953 another license issued to applicant was cancelled for ceasing to conduct a bona fide restaurant.
That he has requested the State Liquor Authority to approve his application and hereby represents that if the application is approved he will exercise a high degree of supervision and control over the licensed premises at all times and will continue to conduct therein a bona fide restaurant.
The applicant also agrees that if his application is approved and the Authority shall have any basis for the institution of revocation proceedings or other proceedings because of the conduct by deponent or any activities in the licensed premises and if the Authority shall determine that the evidence presented sustains any charge or specification the Authority, in assessing the penalty, shall consider the previous licensed history of deponent and the premises and the terms of this affidavit and stipulation.
This affidavit is submitted by the applicant with full knowledge that the Authority will rely on the contents thereof and its representations in making a determination on the application filed by the undersigned.
*698 The notice of disapproval dated March 6, 1956 is as follows:
Please take notice that your application for a retail license is hereby disapproved by the State Liquor Authority for the following reasons: —
The records of the Authority indicate that while the holder of a Restaurant Liquor License for the premises for which a license is presently sought, he was advised on January 11, 1939, in a personal interview, that he must have his books and records on the licensed premises at all times in order that they might be available for inspection by the proper authorities; and that he must permit an inspection by the proper authorities of the entire licensed premises during the horas that alcoholic beverages are sold. This license was cancelled on September 27, 1944, because of a sale of alcoholic beverages to an intoxicated person and for ceasing to conduct a bona fide restaurant on the premises.
Another Restaurant Liquor License was issued to the applicant for the same premises on December 15, 1944, following a personal interview in which the applicant gave assurances to the Authority that there would be no repetition of the conditions which culminated in the cancellation of his previous license. On January 19, 1953, in a personal interview, the applicant was warned that his license might not be renewed unless he increased his food sales, kept proper books and records and kept the premises in a satisfactory condition. On September 9, 1953, this license was cancelled for ceasing to conduct a bona fide restaurant on the premises.
A request will be forwarded to the Comptroller to have refunded to you the license fee deposited at the time of filing your application. As prescribed by the Alcoholic Beverage Control Law, this refund is subject to a deduction of $15. (Refund: $318.33)
Certified by Henry Rizzuto (Signed) By order of
STATE LIQUOR AUTHORITY
To Jacob Berkowitz
Main Street, Old Forge, New York Thomas E. Rohan
Chairman (Stamped)
(K)- (cont’d on page 2)
(Serial Herkimer RL551)
(Jacob Berkowitz)
Thereafter, on February 17, 1954, an application for a Restaurant Liquor License for the same premises was disapproved by the Authority for the reasons that the premises were not operated as a bona fide restaurant; that access from the premises to other parts of the building was contrary to the provisions of the Alcoholic Beverage Control Law; that the physical layout of the premises was unsatisfactory because the interior visibility was inadequate and would hamper the effective enforcement of the Alcoholic Beverage Control Law; and that the Authority has no reasonable assurance that the applicant would in fact operate a bona fide restaurant.
In accordance with its progressive policy of issuing licenses, in a personal interview on January 17, 1956, the Authority explained to the applicant the requirements and standards of operation of premises sought to be licensed in order to comply with the provisions of the Alcoholic Beverage Control Law. Because of the past records of this licensee and of the premises sought to be licensed, the applicant was requested to acknowledge the past history of these premises and to give the Authority firm assurances that he would exercise a high degree of supervision over the premises and operate the same in accordance wife the standards and requirements of the Alcoholic Beverage Control *699 Law, in the event this license was issued to him. This the applicant refused to do.
In view of the aforesaid prior record for law observance of the applicant and of the premises sought to be licensed while under the operation and control of the applicant, the Authority has determined that the issuance of the new Restaurant Liquor License sought herein would create a high degree of risk in the administration and enforcement of the Alcoholic Beverage Control Law and would not be conducive to the proper regulation and control of the . sale and distribution of alcoholic beverages.
Except for the two prior revocations and the applicant’s refusal to sign the confession of guilt in the form of the affidavit submitted to him there are no other grounds stated in the disapproval notice for the action by the Authority. There is no statement in the answer or supporting affidavit that any hearing was held, that any evidence was taken or that any evidence existed, that from the time of the revocation of petitioner’s license on September 9, 1953 until the interview in Albany on January 17, 1956 the petitioner had not maintained a bona fide restaurant; that he had not kept adequate books or records on the premises; that he refused to permit inspection; that he had not maintained the premises in a suitable condition acceptable to the Authority as a restaurant and bar. On the contrary the papers presented by the petitioner affirmatively established that he had complied with all of such requirements. No denial thereof was made by respondents in their papers. It appeared that petitioner had spent some $2,700 remodeling the interior of his establishment to correct objections by the Authority; that he had done a gross restaurant business of $13,200 in 1954, $12,900 in 1955 and a similar estimated amount in 1956. The petitioner asserted that no complaints had been lodged or filed against his conduct of his business since revocation of his license. This was not denied by respondents.
It is, therefore, apparent that the action hereby sought to be reviewed was taken based upon the three following grounds:
(1) Because of a sale of alcoholic beverages to an intoxicated person in 1944.
(2) License cancelled for ceasing to conduct a bona fide restaurant on the premises.
(3) Befusal of petitioner to sign affidavit prepared by the Authority hereinbefore quoted at page 697.
I will, therefore, consider the sufficiency of each of these grounds.
With reference to charge number one, it should be noted that this is based on the revocation of the petitioner’s license September 27,1944 while he was in the military service and while he *700 was in no way responsible in the management of the business. Forty-one days later, when the petitioner obtained leave from the service and appeared personally in Albany, his license was restored. Under section 113 of the Alcoholic Beverage Control Law, this prior revocation was only available to the Authority as grounds to refuse a new license during a period of two years after a revocation. (See Matter of Rossi v. O’Connell, 197 Misc. 718, affd. 277 App. Div. 857.)
With reference to charge number two, it should be noted that the revocation relied upon by the Authority occurred September 9, 1953. The grounds for that revocation were that the petitioner had ceased to operate a bona fide restaurant within the provisions of the Alcoholic Beverage Control Law. The resort nature of the community in which the petitioner lives and conducts his business has already been referred to. He applied for a new license December 30,1953. It was denied by the Authority February 17, 1954 for the reason among others that the restaurant did not meet the approval of the Authority in matters of construction. Thereafter the petitioner expended some $2,700 to eliminate the objectionable construction of the restaurant. He has since conducted the premises as a restaurant. His gross food sales in 1954 exceeded $13,200, in 1925 exceeded $12,900 and in 1956 he estimates the same approximate gross. The application here under consideration was made November 25,1955 more than two years after the revocation of his prior license. The Authority is not, therefore, justified, as a matter of course, in standing upon the violation for which the revocation order of September 9, 1953 was issued. (Alcoholic Beverage Control Law, § 113; Matter of Rossi v. O’Connell, supra.)
With reference to charge number three, which relates to the petitioner’s refusal to sign an affidavit prepared by the Authority and submitted to him for signature as the basis for possible favorable action upon his application of November 25, 1955, it should be noted that the affidavit was submitted at a conference at Albany requested by the Authority at which petitioner was not represented by counsel. No evidence was taken at this conference nor is there any indication that any record of the conference was kept which could be reviewed by the court. There are, therefore, no facts supporting the action of the Authority which can be reviewed by the court to determine the reasonableness of the action of the Authority or in fact to determine if any facts were before the Authority upon which the determination could be made, The Authority does not rely on any additional facts other than the revocations referred to in charges “ One ” and “ Two ” (supra) and the mere failure of the applicant to *701 sign the affidavit submitted to him by the Authority. Do such reasons constitute a factual basis for the disapproval of the application? I think not. The rule was well stated by Judge Lewis in Matter of Barry v. O’Connell (303 N. Y. 46, 51, 52).
An examination of the affidavit, which has been previously set forth in detail, convinces me that it served no material or relevant purpose except possibly to extract from the applicant an agreement to comply with the rules, regulations and requirements of the Alcoholic Beverage Control Law and of the Authority. Such a promise was inherent in the filing of the application by the petitioner. Any violations by him of the law or the rules, regulations and requirements of the Authority would result in a revocation of his license as he had already experienced on several occasions. As will later he pointed out, the applicant advised his interviewers that he would agree to those provisions of the affidavit hut that he would not acquiesce in the additional provisions which were inserted in the affidavit which amounted to a confession by him of guilt upon the occasion of the two prior revocations. There could he no possible purpose or necessity for the abstraction of such a confession from the applicant whether under oath or otherwise. It was in my opinion entirely unfair, prejudicial and highly improper.
While the petition in this proceeding was not before the Authority at the time of and formed no part of the basis for its denial of the petitioner’s application, the answering affidavit submitted by the respondent upon this application indicates clearly that great importance was placed by the interviewers of the petitioner upon his refusal to sign the affidavit submitted by them. The answering affidavit is submitted by the deputy commissioner who conducted the interview: He states therein:
“ For reasons best known to himself the petitioner refused to sign this affidavit.” This is at best a conclusion and there is no denial of the statement in the petition, which sets forth in detail, the reasons ascribed by the petitioner for refusing "to sign the affidavit. Respondents’ affidavit then goes on to say:
“ Quoting verbatim from paragraph 37 of the petition, the petitioner alleges that ‘ Additionally the said affidavit contained a statement or statements which in substance constituted an agreement that Petitioner if granted a restaurant liquor license would operate the premises in accordance with the requirements of the Alcoholic Beverage Control Law. ’
“ The reason advanced by the petitioner for his refusal to sign the above mentioned affidavit, standing alone, would be sufficient basis for disapproving his application, even disregarding his prior license history. But, when, it is considered that two *702 previous licenses issued to the petitioner for these very premises were cancelled because of his failure to operate a bona fide restaurant, then it becomes quite evident that petitioner has no intention of complying with the requirements of the Alcoholic Beverage Control Law.” (Emphasis supplied.)
The last sentence of the above quotation from the respondent’s answering affidavit is obviously a conclusion which is not based upon any evidence or facts whatsoever. It could not form a proper basis for the refusal of an application for a license. The deputy commissioner, however, in the above quotation, took the same from context. It is necessary to read paragraphs 36, 37, 38 and 39 of the petition in order to ascertain what it really does set forth as to the petitioner’s willingness to agree to comply with the provisions of the Alcoholic Beverage Control Law if his application were granted. In paragraph 36, the petitioner pointed out that the affidavit contained a confession of the previous violations. Paragraph 37 pointed out in addition thereto that it contained an agreement on his part to operate the premises in accordance with the requirements of the Alcoholic Beverage Control Law if he were granted his license. Paragraph 38 sets forth that he refused to sign the affidavit only because it contained the confession and that he so advised the Authority and finally in paragraph 39 that he was at the time of the interview and at the present time willing to sign any agreement that he would operate his premises in accordance with all of the standards and requirements of the Authority and that he advised the representatives of the Authority present at the conference of his willingness so to do. The interpretation placed upon the allegations contained in paragraphs 36, 37, 38 and 39 of the petition by the deputy commissioner as evidenced by his quotátion from paragraph 37, is incorrect and most unfair even though the same may be considered to have resulted only from a hasty reading of paragraphs 36-39 inclusive.
An administrative body such as the State Liquor Authority must of necessity have broad discretion which rigidly confines the bounds within which judicial review may function. The law is well settled that if the determination of an administrative agency upon a matter within its competence rests on substantial evidence, the courts must accept the determination as final. Unless the administrative finding is arbitrary or capricious, it is beyond the reach of judicial rebuke and this rule has often been applied in cases arising under the Alcoholic Beverage Control Law. (Matter of Roccaforte v. O’Connell, 271 App. Div. 831, affd. 296 N. Y. 938.) However, the court is still under the duty to inquire whether a challenged determination rests on sub *703 stantial evidence. In Matter of 54 Cafe & Restaurant v. O’Connell (274 App. Div. 428, 431, affd. 298 N. Y. 883) the court stated: “they [courts] have by no means abdicated their judicial responsibility to review and pass upon administrative action claimed to be arbitrary and without foundation in fact or in law.”
In my opinion the Legislature never intended to give the Authority the power to put a ban of unlimited duration on premises affected by a revocation solely upon the grounds which formed the basis of the prior revocation or it would have so expressed its purpose in direct language. (Matter of Radigan v. O’Connell, 280 App. Div. 92, 304 N. Y. 396.)
“ Where a license for any premises has been revoked, the liquor authority in its discretion may refuse to issue a license under this chapter, for a period of two years after such revocation, for such licensed premises or for any part of the building containing such licensed premises and connected therewith.” (Alcoholic Beverage Control Law, § 113.) This does not mean to suggest that the Authority may not even after the lapse of two years refuse a license for the premises to the former licensee but there must.be reasonable grounds therefor. The statute forbids refusal of a license after the two years have gone by solely because of the prior revocation. (Matter of Rossi v. O’Connell, 197 Misc. 718 affd. 277 App. Div. 857, motion for leave to appeal denied 277 App. Div. 873, supra.)
A reviewing court, it is true owes a deference to the Authority— an administrative board — in the exercise of its discretion within the law. That discretion, however, cannot be invoked outside the law. It is for the courts, not for administrative boards, to determine what action is within or without the law. “ Laws are made by the law-making power and not by administrative officers acting solely on their own ideas of sound public policy, however excellent such ideas may be.” (Matter of Picone v. Commissioner of Licenses, 241 N. Y. 157,162.)
It is evident that the refusal of the petitioner to sign the affidavit submitted to him at the interview was the only basis relied upon by the Authority in addition to the two prior revocations. The affidavit and its contents could not, in my opinion, be relevant or material to the inquiry or to the issuance or non-issuance of any license, whether standing alone or whether taken in conjunction with the two prior revocations. The two prior revocations could not in and of themselves justify a refusal by the Authority to issue a new license as the application under consideration was filed more than two years after the last revocation. The refusal to grant the application upon the ground of *704 the prior revocations would be unauthorized as a matter of law. The refusal to grant the application upon the ground of the petitioner’s refusal to sign the affidavit would be, in my opinion, arbitrary and capricious. It follows that the disapproval of the petitioner’s license application must be annulled and the motion to that extent is granted, with $20 costs. (Matter of Muoio v. O’Connell, 276 App. Div. 1050.)
The proceeding is remitted to the State Liquor Authority for further consideration in accordance with this opinion. Order accordingly.