<hr />

(July 8, 1969)

■    In the Matter of MELVIN GITLIN, Doing Business as KNOBBY'S RESTAU-RANT, Petitioner, v. DONALD S. HOSTETTER et al., Constituting the STATE LIQUOR AUTHORITY, Respondents. — REYNOLDS, J.   Proceeding under CPLR article 78, transferred to the Appellate Division of the Supreme Court in the Third Judicial Department by an order of the Supreme Court at Special Term, entered in Sullivan County, to review a determination of the New York State Liquor Authority which suspended the petitioner's liquor license and imposed a fine of $250. Petitioner, the owner and operator of a bar and restaurant at Kiamesha Lake, Sullivan County, New York, duly licensed to sell liquor, beer and wine for on-premises consumption, was found to have violated subdivision 3 of section 106 of the Alcoholic Beverage Control Law on August 28, 1966 by selling an alcoholic beverage for consumption off the premises. The sole question is whether the record discloses "substantial evidence" to support the adminis-trative determination (Matter of Humphrey v. State Ins. Fund, 298 N. Y. 327, 331, 332; Matter of Miller v. Kling, 291 N. Y. 65; Matter of Stork Rest. v. Boland, 282 N. Y. 256). Eugene Marlow, a resident of Kiamesha Lake, testified that on August 28, 1966 he bought 2 pint bottles of port or muscatel from peti-tioner, which he did not consume on the licensed premises. This testimony was corroborated by Trooper Carter who stated that on that day he gave Marlow $2, watched him go into the petitioner's premises, and that Marlow returned with two pint bottles of muscatel in a paper bag. The board found that petitioner "sold, delivered or gave away or permitted liquor and/or wine to be sold or given away for consumption off the premises where sold on August 28, 1966." Clearly, the testimony of Marlow and Carter is substantial evidence supporting the board's finding that wine was delivered to Marlow, and that it was not con-sumed on the premises. The fact that the hearing officer rejected Marlow's testimony, of course, did not preclude the board from accepting it. There is no basis on the instant record for this court to hold that the board was required to reject Marlow's testimony as pure speculation. The minority memorandum for reversal rests on the conclusion that " [a]s a matter of law, there is no sub-stantial evidence in the record here to support the determination of the Authority"; but it is surely beyond dispute that Marlow testified to an illegal sale and thus the issue is not that of substantiality but that of credibility; the question of Marlow's credibility, upon consideration by the Authority, was not

for the hearing examiner, as the minority memorandum seems to suggest, but for the Authority itself; and this court, most certainly, is without power to determine "as a matter of law" that Marlow's testimony was incredible. "Where the evidence is conflicting, it is for the administrative board to pass upon the credibility of witnesses and to base its inferences on what it accepts as the truth." (*Matter of Avon Bar & Grill* v. *O'Connell*, 301 N. Y. 150, 153; *Matter of Bruso* v. *State Liq. Auth.*, 29 A D 2d 910.) Nothing in derogation of this fundamental principle of administrative law is to be found in *Matter of Kelly* v. *Murphy* (20 N Y 2d 205), relied upon by the dissenters. There, a closely divided court, in reviewing "'police trials upon charges involving criminality'" required "'some corroboration'" of the accomplice upon whose testimony the finding of guilt rested (p. 208). Clearly, then, *Kelly* is inapposite; but if corroboration should be required in the case before us, it is to be found in the testimony of the police officer who awaited Marlow's return from the restaurant. Moreover, while admittedly the board's finding is conclusory in form and repeats the statutory language (see *Matter of Jackson* v. *Rohan*, 1 A D 2d 89), in this particular proceeding there is presented but one narrow issue, did petitioner provide wine to Marlow for off-premises consumption? The charge was that petitioner made a specific sale of wine for off-premises consumption; Marlow testified to the sale; the Authority found that it was made. It is difficult to perceive what further finding is necessary. In this case, "the conflicting issues were so limited and so clearly defined as to permit of no doubt as to the basis of the board's determination, and remittal would serve no useful purpose" (*Matter of Cliff* v. *Dover Motors*, 11 A D 2d 883, 884, affd. 9 N Y 2d 891; and see *New York State Elec. & Gas Corp.* v. *Moratto*, 25 A D 2d 913). Remittal "merely to enable the [Authority] to correct the language of its decision would be an unnecessary and wasteful ceremony" (*Matter of Jessup* v. *Jessup & Stevens Garage*, 12 A D 2d 699, 700, affd. 10 N Y 2d 854). Determination confirmed and petition dismissed, with costs. Gibson, P. J., Reynolds and Greenblott, JJ., concur in memorandum by Reynolds, J.; Herlihy and Staley, Jr., JJ., dissent and vote to annul in a memorandum by Staley, Jr., J. STALEY, JR., J. (dissenting). I am unable to agree with the majority that the record here contains substantial evidence to support the finding of the Authority. "A finding of an administrative agency 'is supported by the evidence only when the evidence is so substantial that from it an inference of the existence of the fact found may be drawn reasonably.' (*Matter of Stork Rest., Inc.* v. *Boland*, 282 N. Y. 256, 273). Insufficient evidence, it has frequently been held, is, in the eyes of the law, no evidence. (*Matter of Case*, 214 N. Y. 199, 204.)" (*Matter of 54 Cafe & Rest.* v. *O'Connell*, 274 App. Div. 428, affd. 298 N. Y. 883.) However, the testimony relied upon to meet the test of substantial evidence must first be competent and credible. "A license to engage in the liquor business, 'even though frequently referred to as a privilege and not a right * * * should be subject to revocation or suspension only upon competent proof showing a clear violation of the applicable regulatory provision' (*Matter of Standard Foods Prods. Corp.* v. *O'Connell*, 296 N. Y. 52, 56; see *Matter of Migliaccio* v. *O'Connell*, 307 N. Y. 566, 568)." (*Matter of Coney-O-Tavern* v. *New York State Liq. Auth.*, 25 A D 2d 549, 550.) In my opinion, in the light of the record as a whole, there is no evidence sufficient in law to sustain the charge as found by the Authority. The Authority produced as witnesses John F. Carter, an investigator assigned to the New York State Police Executive Department and Eugene K. Marlow, a resident of Kiamesha Lake. Upon the complaint of one Oscar Glaser, who was an owner of a retail liquor store across the street from petitioner's premises, a scheme was devised by Glaser and Carter to have Marlow

purchase wine from the petitioner for consumption off the premises. However, the testimony of Marlow is so confusing and contradictory as to be "unworthy of belief" as found by the hearing officer, which finding is supported by the record. Marlow testified that he did not have anything to drink on August 28; that he did not see Carter before he entered the restaurant; that the only one he saw before he entered the restaurant was Ozzie Stanridge. He further testified that he entered the restaurant at around 3:00 P.M. and later stated "About 1:30 or 2:00"; that he bought two pints of wine from petitioner, but was not certain whether it was port wine or muscatel wine; that the bottles were sealed; that petitioner gave him two bottles from a box on the kitchen floor; that he gave petitioner $2 which he had obtained from Ozzie; that he put the two bottles in his belt and then left the premises and crossed into the woods, and that the bottles were taken by the police officer who initialed them and took them away. An F. B. I. report and a Department of Corrections report admitted into evidence indicate that Marlow has a lengthy criminal record including convictions for burglary and unlawful entry, assault with intent to murder, and public intoxication. He admitted that he had been convicted eight or nine times for public intoxication. Carter testified that on August 28, 1966 he met with Marlow and Oscar Glaser who had complained that petitioner was selling liquor for off-premises consumption. He admitted that Glaser was a constant complainer. He further stated at this meeting, which took place between 6:00 P.M. and 6:30 P.M., Marlow was given $2 to purchase wine at petitioner's restaurant, and that the money was given to Marlow as a part of a scheme to have him purchase the beverage. Carter's testimony relative to the money given to Marlow and by whom it was given, is confusing since he stated that he believed it was his money, but he was not sure, and that he could not remember whether or not Glaser had given the money. He testified that he believed that Marlow had been drinking on the day in question but he did not appear to be intoxicated. Carter and Glaser then proceeded to a vacant lot across the street from petitioner's restaurant, and Marlow entered the petitioner's restaurant. A short time later Marlow came out carrying a paper bag which Carter stated contained two pint bottles of muscatel wine. Although Carter testified that he saw Marlow leave petitioner's premises, he admitted that he could not see Marlow inside the premises; did not see Marlow make any payment; and did not see a delivery of wine to Marlow. He also admitted that he did not search Marlow before he entered petitioner's restaurant, and was unaware of Marlow's criminal record. It is significant to note that the bottles of wine, alleged to have been purchased by Marlow, and initialed by Carter were not offered in evidence, and also that Glaser was present at the hearings and was not called as a witness for the Authority. Sam Freiberg, called as a witness by petitioner, testified that he was in the kitchen with petitioner when Marlow came in at about 6:30 P.M. and asked for "a couple of bottles of wine" and that petitioner told him "We don't sell any wine" and no wine was sold or given to him. He further stated that when he came out of the kitchen, Marlow was by the door and had left when Freiberg went out. He did not notice any cases of wine in the kitchen. Petitioner testified that he was working alone on August 28, 1966; that Marlow came into the kitchen around 6:30 P.M. where he was making sandwiches for Sam Freiberg, and asked if he could have a couple pints of wine to go, and that he replied "You know I don't sell any wine to go"; that Marlow then left the kitchen; that he finished making the sandwiches, he returned to the bar where he saw Marlow near the front door talking to somebody and saw him leave. He further testified that he did not sell any alcoholic beverages to Marlow or to anybody else on that day for off-premises consumption. The hearing commis-

sioner, upon consideration of Marlow's criminal record and his observations during the time he testified found Marlow "absolutely unworthy of belief" and in finding the charge not sustained, noted that he did not discredit the testimony of Investigator Carter, "but Carter did not see the purchase." He also took into consideration the fact that Marlow "was probably intoxicated and the whole idea was fostered by a neighboring liquor store owner." The State Liquor Authority reversed these findings and imposed a penalty of 10 days and a $250 bond claim by a two to one vote. There is nothing in the record to indicate any reason for reversing the determination of the hearing commissioner. "The findings of the hearing officer, involving as they did primarily questions of credibility, were entitled to considerable weight (*Matter of Kelly* v. *Murphy*, 20 N Y 2d 205; *Matter of 54 Cafe & Rest.* v. *O'Connell*, 274 App. Div. 428, 430, affd. 298 N. Y. 883)." (*Matter of Rochdale Mall Wines & Liqs.* v. *State Liq. Auth.*, 29 A D 2d 647; see, also, *Matter of Sorrentino* v. *State Liq. Auth.*, 10 N Y 2d 143.) Where the case turns almost exclusively upon issues of credibility the courts have recognized that the hearing officer who sees and hears the witness has a much better perspective in deciding the truth. While the ultimate responsibility to decide facts rests with the agency, the failure to adopt the examiner's report is a significant factor in determining whether the agency findings are supported by substantial evidence on the whole record which necessarily includes the examiner's contrary report. In *Matter of Kelly* v. *Murphy* (20 N Y 2d 205) the court citing *Universal Camera Corp.* v. *Labor Bd.* (340 U. S. 474) stated at pages 209–210: "In the *Universal Camera* case it was said (p. 493) that 'surely an examiner's report is as much a part of the record as the complaint or the testimony', and that, although it is not conclusive against being overruled by the board or Commissioner that sits in judgment without having seen or heard the witnesses, the trial examiner's report is entitled to weigh in determining the existence of substantial evidence particularly ' " to the extent that material facts in any case depend on the determination of credibility of witnesses as shown by their demeanor or conduct at the hearing " ' (quoted from the Senate committee report on the Administrative Procedure Act at page 496 of 340 U. S.) There is no reason on account of which we should depart from these standards of judgment in applying State Law, nor have we done so as appears from the cases in this court cited above. In the Federal Courts of Appeal the findings of trial examiners on questions of credibility are frequently followed in deciding whether the evidence before the board or Commissioner was substantial." And in the *Universal Camera* case the Supreme Court further stated at page 496: "The findings of the examiner are to be considered along with the consistency and inherent probability of testimony. The significance of his report, of course, depends largely on the importance of credibility in the particular case. To give it this significance does not seem to us materially more difficult than to heed the other factors which in sum determine whether evidence is 'substantial.'" In *Matter of Jackson* v. *Rohan* (1 A D 2d 89), the court stated at page 91: "The revoking Authority found no facts at all. The order did not even adopt the meagre and insufficient findings of the hearing commissioner. It merely recites that the State Liquor Authority duly considered the proceedings and found that the licensees violated the section 'in that they suffered or permitted the licensed premises to become disorderly on or about March 18, 1955.' Until this court is made cognizant of what facts were found by the revoking Authority, it cannot decide whether the findings are sustained by the evidence." (See, also, *Matter of Di Maso* v. *New York State Liq. Auth.*, 28 A D 2d 1142; *Matter of New York Water Serv. Corp.* v. *Water Power and Control Comm.*, 283 N. Y. 23; *Matter of Carroll* v. *Ryan*, 25 A D 2d 562; *Matter of Di Orio* v. *Murphy*, 20 A D 2d 754; *Matter of Pasch* v. *Gerosa*, 18 A D 2d 982;

*Matter of Scudder* v. *O'Connell*, 272 App. Div. 251.) The failure to state its reason for reversing the hearing commissioner's finding that the testimony of Marlow was "absolutely unworthy of belief", particularly when the record supports such finding, places the determination that a sale was made to Marlow by petitioner in the realm of pure speculation. Where the Authority's conclusions are based on speculative inferences unsupported by the record, its determination should be annulled. (*Matter of Matty's Rest.* v. *New York State Liq. Auth.*, 21 A D 2d 818, affd. 15 N Y 2d 659.) As a matter of law, there is no substantial evidence in the record here to support the determination of the Authority. The determination should be annulled and the matter remitted to the State Liquor Authority.